**RICHARD WOLF MEDICAL INSTRUMENTS CORP. and Richard Wolf, GmbH, Plaintiffs,**

v.

**Jacques DORY and Edap, S.A., Defendants.**

No. 87 C 1254.

United States District Court, N.D. Illinois, E.D.

April 5, 1990.

See also, D.C., 723 F.Supp. 37.

Nate F. Scarpelli, Marshall, O'Toole, Gerstein, Murray & Bicknell, Chicago, Ill., William Schurtman, Gregory F. Hauser, Walter, Conston, Alexander & Green, P.C., New York City, Ronald L. Panitch, William W. Schwarze, Panitch, Schwarze, Jacobs & Nadel, Philadelphia, Pa., for plaintiffs.

A. Sidney Katz, Suzanne Hines, Jerold B. Schnayer, Hartwell P. Morse, III, Welsh & Katz, Ltd., Chicago, Ill., for defendants.

Edwin H. Taylor, David R. Halvorson, Ronald Reagin, Blakely, Sokoloff, Taylor & Zafman, Los Angeles, Cal., for third party Diasonics, Inc.

## MEMORANDUM OPINION

ELAINE E. BUCKLO, United States Magistrate.

Defendants Jacques Dory and EDAP, S.A. ("EDAP") and non-party Diasonics, Inc. seek an order allowing EDAP to disclose to Diasonics documents produced in the course of this litigation. This case was settled pursuant to a consent judgment dated October 12, 1989. EDAP has sued Diasonics in federal court in California. EDAP and Diasonics say the California litigation involves the same patents that were at issue in this case. Diasonics says documents produced by plaintiff in this case and certain deposition testimony may help it prove a defense to defendants' charges of patent infringement. Diasonics also says that it will be less expensive to obtain the documents and related testimony this way than by pursuing discovery in the California suit. Plaintiffs Richard Wolf Medical Instruments Corp. and Richard Wolf, GmbH ("Wolf") oppose the present motion on the ground that a protective order entered by the court in this case prohibits disclosure of the documents. I agree that disclosure should not be allowed.

On April 5, 1988, at the request of all parties, I entered an agreed amended protective order in the *Wolf v. Dory* litigation. The protective order contained standard provisions allowing each party to designate certain material as "confidential" or "sensitive confidential," prohibiting disclosure of any such information to persons other than those specifically designated, allowing any party to seek a court order that a confidential or sensitive confidential designation was inappropriate, and providing for the return or destruction of all documents (including depositions so marked) at the termination of the litigation. Sometime during the summer of 1989 in the California suit brought against Diasonics by EDAP, Diasonics served a motion to produce documents received by EDAP in this case. In September, 1989 EDAP and Wolf concluded discussions regarding settlement of this case, which culminated in the consent decree dated October 12, 1989. During the settlement discussions, EDAP did not inform Wolf that it had been asked to produce documents produced by Wolf in the California suit. Paragraph 5 of the October 12 consent decree provides:

> The Amended Protective Order, ... heretofore stipulated by all parties and entered by the Court in this action, shall remain in effect, and documents and other information produced or otherwise given pursuant to said Amended Protective Order shall remain subject to said Order.

> Jurisdiction of this Court is reserved with respect to the provisions of said Amended Protective Order.

Not knowing that EDAP was subject to a request to produce in California many of

the documents produced by Wolf under this protective order, Wolf began complying with paragraph 14 of the protective order soon after the consent decree was entered in this case. Paragraph 14 of the protective order required that "within 30 days after final termination of this case" all documents marked confidential or sensitive confidential were to be returned to counsel for the producing party or a certification provided that all originals and copies had been destroyed. On November 21, 1989, Wolf's counsel, William W. Schwarze, wrote EDAP's attorney, Jerold B. Schnayer, stating that he had "not heard from you with respect to our telephone conversation of November 7, in which I suggested that all sides shred the confidential documents and exchange certificates of destruction." Mr. Schwarze informed Mr. Schnayer in that letter that in accordance with paragraph 14 of the protective order, he was ordering all counsel for Wolf to destroy the documents in question. By letter dated December 29, 1989, counsel for EDAP first informed Wolf's lawyers about the request for the Wolf documents in the California case and that it had therefore not complied with paragraph 14. After discussions seeking to resolve the problem failed, EDAP brought the present motion.

In proceedings before me there has been considerable discussion regarding whether EDAP violated the protective order by its actions. EDAP points out that it could not destroy the documents until this issue was resolved once it received a document request in the California case seeking the documents in this case. That is not disputed. EDAP has not satisfactorily explained why, however, it did not inform Wolf of the request prior to the conclusion of settlement discussions and the entry of the consent decree in this case, nor why it waited until December 29, 1989 to do so. Its explanation of attempting to have a protective order entered in the California case before discussing the problem with Wolf's counsel, or even informing them of the problem, is not persuasive. Wolf agreed to a settlement believing that pursuant to a valid protective order the documents and other confidential information

produced by it would be either returned to it or destroyed. I do not know whether Wolf would have agreed to the settlement if it had known of the request, but the fact that EDAP failed to inform Wolf of its existence at a time when compliance with the protective order was considered important enough to be explicitly referred to in the consent decree suggests that EDAP may have been concerned that knowledge of the request might have been considered important to Wolf. Even after the consent decree was entered, knowing that Wolf intended to comply with its obligation to return or destroy documents, EDAP waited until it should reasonably have believed Wolf had destroyed EDAP's documents (and it apparently had) before informing Wolf of the outstanding document request for Wolf's documents. EDAP should have informed Wolf promptly of the request for production—certainly before the consent decree—and should have informed this court that it would be unable to comply with paragraph 14 of the protective order until the question of production of documents in the California case was resolved.

■ EDAP's violation of the protective order does not dispose of the issue before me, however, since Diasonics did not, so far as I have been informed, take part in any misconduct. The general rule, nevertheless, is that non-parties to litigation cannot obtain documents marked "confidential" and nondisclosable under a protective order such as exists in this case. *E.g., Federal Deposit Insurance Corporation v. Ernst & Ernst,* 677 F.2d 230, 232 (2d Cir.1982) (non-parties could not have access to the terms of a settlement entered pursuant to a protective order; the court explained that "[o]nce a confidentiality order has been entered and relied upon, it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification."); *Martindell v. International Telephone and Telegraph Corporation,* 594 F.2d 291, 295–96 (2d Cir.1979) (denying government's motion to obtain deposition testimony in action between private parties). In *Martindell,* Judge Mansfield held that even the government's interest in ob-

taining relevant evidence for law enforcement purposes could not outweigh the interest in being able to rely on a protective order. He noted that the function of a protective order is to " 'secure the just, speedy, and inexpensive determination' of civil disputes, Rule 1, F.R.Civ.P., by encouraging full disclosure of all evidence that might conceivably be relevant." *Id.* at 295. He continued:

> This objective represents the cornerstone of our administration of civil justice. Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences.... *Id.*

*Accord, e.g., GAF Corp. v. Eastman Kodak Co.,* 415 F.Supp. 129, 131 (S.D.N.Y. 1976), in which Judge Frankel noted that there "has been throughout an explicit understanding between the parties that discovery was being demanded and given solely for use in, and preparation of, this case."

EDAP and Diasonics rely on *American Telephone and Telegraph Company v. Grady,* 594 F.2d 594 (7th Cir.1978), *cert. denied* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979) to support disclosure. There, however, the Seventh Circuit merely affirmed an order allowing disclosure to the government. It nevertheless stated that "where a protective order is agreed to by the parties before its presentation to the court, there is a higher burden on the movant to justify the modification of the order" and indicated that generally a litigant should be able to "take the scope delineated by a protective order 'literally.' " *Id.* at 597.

All of the considerations favoring enforcement of the nondisclosure terms of the protective order are applicable in this case. The parties to this case are competitors. They agreed to a protective order in which documents and other information produced by one side would be returned or destroyed at the conclusion of the case. There were many hard fought discovery battles as well as agreements reached over production. Some of the orders entered restricted production to particular counsel because of the court's concern, based on experience in the case, that certain persons within EDAP or representing it could not be trusted to abide even by a protective order. The parties settled the case, concluding their dispute with the explicit understanding that all the information produced during discovery would be returned or destroyed. Wolf, in reliance on that agreement, destroyed documents and information received by it from EDAP. For unknown reasons, EDAP did not disclose the existence of the discovery request until after all of this had been done. Also for unknown reasons, EDAP now vigorously seeks production of this material to its opponent, Diasonics. Diasonics has not shown any need for the materials in question beyond the usual desire of a litigant for material that could be useful to it in defense of EDAP's lawsuit. If that is the extraordinary showing that would allow disclosure in the face of a protective order such as entered in this case, no litigant can safely rely on a protective order. I conclude that neither EDAP nor Diasonics has shown sufficient cause for modification of the protective order in this case to allow disclosure to Diasonics of the information requested. The motion is denied.